Rylee Matthew Fleury, Plaintiff in *pro per*
17246 Maple Lane
LA Conner WA 98257
ryleefleury@protonmail.com

FILED
LODGED
ENTERED
RECEIVED

AUG 22 2024

RE

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY    WESTERN DISTRICT OF WASHINGTON
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| Rylee Mathew Fleury, | ) Case No. 2:24-W-01321-BAT |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT FOR CIVIL RIGHTS** |
| CHARLIE PLATT, CHAD GILBERT, KINETIC | ) **VIOLATION AND DAMAGES** |
| LOGISTICS, STEVE JONES, CRAIG TAYLOR, | ) |
| PAUL McELROY, ALLIED UNIVERSAL INC., | ) **TRIAL BY JURY DEMANDED** |
| FREDERICK W. SMITH, FEDEX CORP, SHELL | ) |
| USA, INC. GRETCHEN WATKINS, ROBERT | ) |
| BEARDEN, and DOES 1-10, | ) |
| | ) |
| Defendant(s) | ) |

**COMPLAINT FOR CIVIL RIGHTS VIOLATION AND DAMAGES**

**TABLE OF CONTENTS**

I. EXECUTIVE SUMMARY
II. INTRODUCTION
III. SIGNIFICANCE OF THE CASE
IV. NATURE OF ACTION
V. JURISDICTION AND VENUE
VI. CONTINUING VIOLATION DOCTRINE
VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES
VIII. STANDING
IX. PARTIES
X. STATEMENT OF FACTS
XI. AFFIDAVITS
XII. COLOR OF LAW
XIII. COLOR OF LAW AND STATE ACTION BY PRIVATE ENTITIES
XIV. ALTERNATIVE PLEADING
XV. CAUSES OF ACTION

XVI. ADDITIONAL LEGAL CONSIDERATIONS
XVII. PRAYER FOR RELIEF
XVIII. CONCLUSION
XIX. DEMAND FOR JURY TRIAL

Count I: Violation of 42 U.S.C. § 1983 - Deprivation of First Amendment Rights Count
II: Violation of Title VII of the Civil Rights Act of 1964 - Religious
Count III: Violation of the Americans with Disabilities Act '
Count IV: Violation of Washington Law Against Discrimination
Count V: Wrongful Discharge in Violation of Public Policy
Count VI: Intentional Infliction of Emotional Distress
Count VII: Violation of Washington's Law on Collection of Personal Data

Count VIII: Civil Conspiracy under 42 U.S.C. § 1985(3
Count IX: Retaliation under Title VII and the ADA
Count X: First Amendment Retaliation under 42 U.S.C. § 1983
Count XI: Violation of Washington's Healthcare Information Act
Count XII: Corporate Liability under Title VII and the ADA
Count XIII: Systemic Pattern or Practice of Discrimination

## I.    EXECUTIVE SUMMARY

1. This action arises from the unlawful discrimination, harassment, and termination of Plaintiff Rylee Fleury, a FedEx delivery driver, during the COVID-19 pandemic. Despite having valid religious and medical exemptions from mask-wearing requirements, Plaintiff was subjected to persistent harassment, public humiliation, and ultimately wrongful termination by the Defendants. This conduct violated Plaintiff's constitutional rights, federal and state anti-discrimination laws, and caused significant emotional and financial harm.

## II.    INTRODUCTION

2. Plaintiff Rylee Fleury brings this action against Defendants CHARLIE PLATT, FREDERICK W. SMITH, CRAIG TAYLOR, PAUL MCELROY, GRETCHEN WATKINS, ROBERT BEARDEN, CHAD GILBERT, and Does 1-10 for violations of his civil rights under color of law, religious discrimination, disability discrimination, violation of medical privacy, and wrongful termination.

3.  Throughout the COVID-19 pandemic, Plaintiff maintained valid religious and medical exemptions from mask-wearing requirements. Despite this, Defendants repeatedly harassed Plaintiff, demanded he violate his sincerely held religious beliefs and disregard his medical needs, publicly humiliated him, and ultimately terminated his employment when he refused to compromise his rights.

4.  Defendants' actions were willful, malicious, and in reckless disregard of Plaintiff's federally protected rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief to prevent future violations.

### III.    SIGNIFICANCE OF THE CASE

5.  This case presents issues of exceptional importance concerning the balance between public health measures and fundamental constitutional rights during times of crisis. It raises critical questions about the extent to which private entities, acting under color of state law, can enforce government mandates in a manner that infringes upon individual liberties.

6.  The Supreme Court has repeatedly affirmed that constitutional rights are not suspended during a pandemic. In Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. ___ (2020), the Court held that "even in a pandemic, the Constitution cannot be put away and forgotten." This principle underscores the importance of this case in defining the boundaries of religious freedom and disability rights in the context of public health emergencies.

7.  Furthermore, this case implicates the ongoing judicial and public debate about the scope of religious exemptions from generally applicable laws, as framed in Employment Division v. Smith, 494 U.S. 872 (1990), and recently revisited in Fulton v. City of Philadelphia, 593 U.S. ___ (2021). It provides an opportunity for the Court to clarify the application of these principles in the novel context of a global pandemic.

8. The resolution of this case will have far-reaching implications for how employers, both private and public, navigate the complex intersection of public health mandates, religious accommodation requirements, and disability rights in future health crises.

## IV.    NATURE OF ACTION

9. This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States. Plaintiff also asserts claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Washington Law Against Discrimination (WLAD), and state common law.

10. This action also includes claims for civil conspiracy under 42 U.S.C. § 1985(3), retaliation under Title VII and the ADA, First Amendment retaliation under 42 U.S.C. § 1983, and violations of Washington's Healthcare Information Act (chapter 70.02 RCW).

## V.    JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) and (4) for claims arising under federal law, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

12. The state law claims, including those under the Washington Law Against Discrimination (WLAD) and Washington's Healthcare Information Act, arise from the same set of facts and circumstances as the federal claims. They involve the same parties, the same pattern of discriminatory conduct, and the same injuries. Adjudicating these claims together serves the interests of judicial economy, convenience, and fairness to the parties. Moreover, the state law claims do not raise novel or complex issues of state law, nor do they substantially predominate over the federal claims, making the exercise of supplemental jurisdiction appropriate in this case."

13. "This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). These claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Specifically:

a) The state law claims arise from the same core of operative facts as the federal claims; b) The state and federal claims involve the same parties and the same pattern of conduct; c) Judicial economy, convenience, and fairness to the parties will be served by adjudicating these claims together;

d) The state law claims do not raise novel or complex issues of state law that would be better addressed by state courts;

e) The state law claims do not substantially predominate over the federal claims; f) There are no exceptional circumstances or compelling reasons for declining jurisdiction.

14. Therefore, the exercise of supplemental jurisdiction over the state law claims is appropriate in this case."

15. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred within the Western District of Washington.

16. This complaint is timely filed within all applicable statutes of limitations. The continuing violation doctrine applies to the ongoing pattern of discrimination and harassment experienced by the Plaintiff.

17. Statute of Limitations; This action is timely filed within all applicable statutes of limitations. The statute of limitations for § 1983 claims in Washington is three years, as established in Rose v. Rinaldi, 654 F.2d 546 (9th Cir. 1981). The statute of limitations for Title VII and ADA claims is 300 days from the last discriminatory act, pursuant to 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed this action within [number] days of his termination, which was the last overt discriminatory act.

## VI. CONTINUING VIOLATION DOCTRINE

18. The continuing violation doctrine applies to Plaintiff's claims. Under this doctrine, as recognized in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), if a plaintiff alleges a pattern or policy of discrimination that continues into the limitations period, the court may consider the entire scope of the policy, including behavior outside the limitations period.

19. In this case, Defendants engaged in a series of related discriminatory acts that collectively constituted a single unlawful employment practice. This ongoing pattern of discrimination continued until Plaintiff's termination on August 30, 2021, bringing the entire course of conduct within the limitations period.

20. The Supreme Court in Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), held that where a plaintiff challenges not just one incident of conduct violating the statute, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within the statutory period of the last asserted occurrence of that practice.

21. Furthermore, under the Lilly Ledbetter Fair Pay Act of 2009, each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment-action that commences a new statute of limitations. Plaintiff's lost wages due to the discriminatory actions of Defendants trigger this provision, further supporting the timeliness of this complaint.

22. "The continuing violation doctrine applies to Plaintiff's claims in the following ways:

a) For the § 1983 claims, the series of related discriminatory acts collectively constitute a single unlawful employment practice that continued until Plaintiff's termination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

b) For the Title VII and ADA claims, the hostile work environment created by Defendants' ongoing harassment and discrimination constitutes a continuing violation. Id.

c) For the state law claims, Washington recognizes the continuing violation doctrine in the context of discrimination claims. Antonius v. King County, 153 Wash.2d 256 (2004)."

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES;

23. Plaintiff was not required to exhaust administrative remedies before filing this action. The Supreme Court in Patsy v. Board of Regents, 457 U.S. 496 (1982), held that exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. § 1983. Moreover, the urgency of Plaintiff's situation and the immediate, irreparable harm caused by the violation of his constitutional rights justify immediate recourse to this Court, as recognized in Steffel v. Thompson, 415 U.S. 452 (1974).

## VIII. STANDING

24. Plaintiff has standing to bring this action under Article III of the Constitution because he has suffered an injury in fact that is fairly traceable to the challenged conduct of the Defendants and is likely to be redressed by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

25. Plaintiff's injuries include loss of employment, emotional distress, damage to reputation, and violation of constitutional rights, all of which are concrete and particularized injuries sufficient to confer standing. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016).

26. Plaintiff has exhausted all required administrative remedies or such exhaustion was not required or possible due to the urgent nature of the constitutional violations and the immediate threat to Plaintiff's livelihood and well-being.

27. "Plaintiff has standing to bring this action under Article III of the Constitution. Plaintiff has suffered concrete and particularized injuries that are actual and imminent, not conjectural or hypothetical, as required by Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Specifically, Plaintiff has suffered:

a) Loss of employment and associated income;

b) Emotional distress and mental anguish;

c) Violation of his constitutional rights to free exercise of religion and freedom from religious discrimination;

d) Violation of his statutory rights under the ADA and Title VII; e) Damage to his professional reputation.

28. These injuries are fairly traceable to the Defendants' actions and are likely to be redressed by a favorable decision from this Court, satisfying the causation and redressability requirements of Article III standing."

## IX.    PARTIES

29. Plaintiff Rylee Fleury is a citizen of the State of Washington and a former employee of Kinetic Logistics, a contractor for FedEx Ground.

30. Defendant CHARLIE PLATT is a citizen of the State of Texas and the owner of KINETIC LOGISTICS INC.

31. Defendant CHAD GILBERT is a citizen of the State of Washington and an employee of KINETIC LOGISTICS INC.

32. Defendant KINETIC LOGISTICS is a corporation organized under the laws of the State of Texas with its principal place of business in Burlington, WA It is the employer of Defendants Charlie Platt and Chad Gilbert and contractor of FEDEX CORP.

33. Defendant FREDERICK W. SMITH is a citizen of the State of Tennessee and the CEO of FEDEX CORP.

34. Defendant FEDEX CORP is a corporation organized under the laws of the State of Delaware with its principal place of business in Memphis, Tennessee. It was the employer of SEO Defendant FREDERICK W. SMITH.

35. GRETCHEN WATKINS is citizen of the State of Texas and the President of SHELL USA.

36. Defendant ROBERT BEARDEN is a citizen of the State of Washington and an employee of SHELL USA.

37. Defendant SHELL USA is a corporation organized under the laws of the State of Delaware with its principal place of business in Houston, Texas. It is the employer of Defendants GRETCHEN WATKINS and ROBERT BEARDEN.

38. Defendant CRAIG TAYLOR is a citizen of the State of Washington and an employee of ALLIED UNIVERSAL INC.

39. Defendant PAUL MCELROY is a citizen of the State of Washington and an employee of ALLIED UNIVERSAL INC.

40. ALLIED UNIVERSAL INC., corporation organized under the laws of the State of Pennsylvania. with its principal place of business in Conshohocken, PA,

41. Does 1-10 are individuals whose identities are currently unknown to Plaintiff, who participated in the unlawful conduct described herein.

## X. STATEMENT OF FACTS

40. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein

41. Prior to the incidents described herein, Plaintiff Rylee Fleury was an exemplary employee of KINETIC LOGISTICS INC, a contractor for FedEx Ground. He was a top producer and trainer for new employees.

42. Plaintiff held sincere religious beliefs and had a medical condition that exempted him from wearing a face mask. These exemptions were in accordance with Washington State's AMENDING ORDER 20-03, 20-03.5, which provides exceptions for "people with a medical condition for whom wearing a face covering could obstruct breathing."

43. For over a year prior to August 11, 2021, Plaintiff had been entering the Shell refinery plant without a mask, without incident.

44. On or about Wednesday, August 11, 2021, while making his normal delivery to the Anacortes Shell Refinery, Plaintiff was stopped by Defendant CRAIG TAYLOR, who interrogated Plaintiff for not wearing a mask.

45. Plaintiff explained his religious/medical exemption to Defendant TAYLOR. Despite this, Defendant Taylor insisted on knowing the particular medical/religious reasons for Plaintiff's exemption, in violation of Plaintiff's constitutional rights and federal privacy laws.

46. Minutes later on the same day, Defendant PAUL MCELROY stopped Plaintiff and told him that despite being aware of Plaintiff's exemption, SHELL USA's mask policy required everyone on Shell's premises to wear a mask.

47. Before Plaintiff left the Shell refinery on August 11, 2021, Defendant TAYLOR accosted Plaintiff again, stating that SHELL USA's company policy overrode Washington State's AMENDING ORDER 20-03, 20-03.5.

48. On the same day, Defendant PAUL MCELROY reappeared and continued to deny Plaintiff entry into the facility. Defendant ROBERT BEARDEN then joined, stating that Plaintiff needed to wear a mask or leave the premises.

49. Also on August 11, 2021, SHELL USA representatives called FEDEX CORP to complain about Plaintiff's refusal to wear a mask. As a result, Plaintiff's employer, KINETIC LOGISTICS INC., was fined $300 by FEDEX .

50. On or about August 11, 2021, at 10:49 AM, Defendant CHAD GILBERT was informed by Plaintiff that Plaintiff would no longer be able to deliver to the Anacortes Shell Refinery. GILBERT told Plaintiff that he was required by law to wear a mask.

51. On the same day at 4:43 PM, Defendant CHARLIE PLATT stated in a company group chat that Plaintiff had refused to put on a mask while on a business delivery, telling employees to "just don't be a dick and put on a mask" regardless of personal beliefs.

52. On or about Thursday, August 12, 2021, at approximately 9:00 AM, Defendant GILBERT confronted Plaintiff about wearing a mask, insisting that it was part of Plaintiff's job.

GILBERT repeatedly interrogated Plaintiff about his personal health information, dismissing Plaintiff's concerns as "being stubborn."

53. Throughout August 12, 2021, Defendant GILBERT continued to harass Plaintiff about wearing a mask, disregarding Plaintiff's explanations about his exemptions and refusing to consider medical studies Plaintiff offered to share.

54. On or about Friday, August 13, 2021, Defendant GILBERT threatened to dock Plaintiff's pay if they received another complaint about Plaintiff not wearing a mask. Consequentially, GILBERT did dock Plaintiff's pay on or about September 10, 2021.

55. On or about Friday, August 27, 2021, at the Shell Refinery, Defendant TAYLOR again demanded that Plaintiff put on a mask or leave the premises.

56. On the same day, SHELL USA again complained to FEDEX CORP about Plaintiff's mask non-compliance, resulting in another $300 fine for KINETIC LOGISTICS INC. Defendant PLATT threatened to charge this fine to Plaintiff and take it from his "bonus."

57. On or about Wednesday, August 25, 2021, Defendant PLATT insisted that Plaintiff take a COVID test, despite Plaintiff's explanation that he had been sick with a stomach bug. On Friday, August 27, 2021, at 11:20 AM, Defendant PLATT falsely told Plaintiff that wearing a mask was a legal requirement.

58. On Saturday, August 28, 2021, Defendant PLATT again falsely stated that mask-wearing was a "legal requirement" and accused Plaintiff of disregarding the welfare of others.

59. On Monday, August 30, 2021, Defendant PLATT instructed Plaintiff to come to work late to avoid other employees, despite Plaintiff's assurances that he was not sick.

60. Throughout the morning of August 30, 2021, Defendant PLATT continued to harass Plaintiff via text messages, demanding he take a COVID test, wear a mask, and provide a doctor's note for his exemptions.

61. On August 30, 2021, at approximately 9:00 AM, Defendant PLATT approached Plaintiff in person, visibly hostile and angry. Platt proceeded to fire Plaintiff, using profane language and falsely accusing Plaintiff of endangering his co-workers.

62. Immediately after firing Plaintiff, Defendant PLATT called together the entire present workforce (approximately 14-25 people) to make a public example of Plaintiff. Defendant PLATT misrepresented Plaintiff's health situation and religious beliefs to the assembled workers.

63. Following Plaintiff's termination, he sent multiple notices and settlement offers to the various defendants, including:

a. A "NOTICE 10 DAY GOOD FAITH SETTLEMENT OFFER" to Defendant CHARLIE PLATT on September 15, 2021, and again on October 28, 2021. b. A "2nd Notice of Constitutional Violations. Notice to Cure" to Defendant CHARLIE PLATT on March 8, 2022. c. A "Notice of 72 Hour Settlement Offer" to Defendant CHARLIE PLATT on May 2, 2022. d. Similar notices were sent to other defendants, including FREDERICK W. SMITH and representatives of SHELL USA, INC and ALLIED UNIVERSAL INC.

64. Despite these notices and settlement offers, none of the defendants took action to remedy the situation or compensate Plaintiff for the violations of his rights.

65. By their failure to respond to these notices, all defendants have agreed by tacit assent that Plaintiff had not broken any valid laws and was fired unjustly.

66. The pattern of events described above demonstrates that Defendants did not act in isolation, but rather worked in concert to deprive Plaintiff of his rights and ultimately terminate his employment. Specifically: a. Defendants TAYLOR, MCELROY, and BEARDEN of ALLIED UNIVERSAL INC coordinated their efforts to deny Plaintiff access to the workplace and report his actions to FEDEX CORP despite being aware of his exemptions. b. Defendant GILBERT of KINETIC LOGISTICS acted in tandem with the SHELL USA, INC employees, reinforcing their demands and escalating the situation to Defendant Platt. c. Defendant Platt of Kinetic Logistics used the complaints from SHELL USA, INC, transmitted through FEDEX CORP, as a basis for harassing and ultimately terminating Plaintiff. d. Defendant SMITH of FEDEX CORP facilitated this coordinated action by implementing a system of fines that punished KINETIC LOGISTICS INC. for Plaintiff's assertion of his rights, thereby pressuring KINETIC LOGISTICS to terminate Plaintiff.

67. This coordinated action among Defendants from different companies suggests a common plan or design to discriminate against Plaintiff and retaliate against him for asserting his legal rights. The timing and similarity of the Defendants' actions, spanning multiple organizations, indicate a level of communication and shared intent that goes beyond independent decision-making.

68. The concert of action among Defendants resulted in an escalating series of civil rights violations, from initial harassment and privacy invasions to ultimate wrongful termination, causing Plaintiff significant harm including loss of employment, emotional distress, and violation of his constitutional and statutory rights.

69. Plaintiff sent multiple affidavits to the Defendants detailing the events described herein. These affidavits were not rebutted by any of the Defendants. Under the well-established legal principle that unrebutted affidavits are accepted as truth and fact in any court, as affirmed in cases such as United States v. Kis, 658 F.2d 526 (7th Cir. 1981) and IRS v. Batson, 782 F.Supp. 1517 (E.D. Cal. 1992), the facts asserted in these affidavits should be accepted as true by this Court.

70. The actions of the Defendants, including employees of private entities such as FEDEX CORP and SHELL USA, INC, constitute action under color of law. By enforcing government mask mandates and COVID-19 policies, these private actors became de facto state actors, as their actions were fairly attributable to the state. This principle is established in cases such as Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) and Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001).

71. Defendant Kinetic Logistics maintained and enforced discriminatory policies and practices that allowed for the harassment and ultimate termination of Plaintiff based on his religious beliefs and medical condition.

72. Defendant SHELL USA, INC implemented and enforced a system of fines that punished its contractors, including KINETIC LOGISTICS, for accommodating employees with religious or medical exemptions to mask mandates.

73. Defendant SHELL USA, INC maintained and enforced discriminatory policies that denied access to its facilities for individuals with valid religious or medical exemptions to mask mandates, in violation of state and federal law.

74. The corporate defendants are liable for the actions of their employees under the doctrine of respondeat superior, as established in Dickinson v. Edwards, 105 Wash.2d 457 (1986). The individual defendants were acting within the scope of their employment when they engaged in the discriminatory conduct described herein.

75. The Defendants' actions, as described above, demonstrate a pattern of willful, repetitive, and intentional violations of Plaintiff's rights. This pattern of behavior shows a reckless disregard for clearly established law and a deliberate intent to discriminate against Plaintiff.

## XI. AFFIDAVITS

76. Plaintiff has attached as Exhibit A the unrebutted affidavits sent to Defendants. Pursuant to Fed. R. Civ. P. 56(e) and the principle established in Lujan v. National Wildlife Federation, 497 U.S. 871 (1990), these unrebutted affidavits may be considered as evidence in support of Plaintiff's claims.

## XII. COLOR OF LAW

77. The actions of the private entity Defendants constitute state action under the "public function" test established in Marsh v. Alabama, 326 U.S. 501 (1946), and the "nexus" test articulated in Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974). By enforcing government-mandated COVID-19 policies, these private actors became de facto state actors. Their actions are "fairly attributable" to the state, as required by Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), because they were enforcing government policies and acting with significant government encouragement.

78. Plaintiff's medical condition substantially limits one or more major life activities, including breathing, as defined in 42 U.S.C. § 12102(2)(A). This condition meets the ADA Amendments

Act of 2008's directive for a broad construction of the term "disability," as clarified in 29 C.F.R. § 1630.2(j)(1)(i).

### XIII.    COLOR OF LAW AND STATE ACTION BY PRIVATE ENTITIES

79. While the Defendants are private entities and individuals, their actions in enforcing government-mandated COVID-19 policies constitute state action for the purposes of 42 U.S.C. § 1983 claims.

80. he actions of the Defendants, including employees of private entities such as FEDEX CORP and SHELL USA, INC, constitute action under color of law. By enforcing government mask mandates and COVID-19 policies, these private actors became de facto state actors, as their actions were fairly attributable to the state.

81. The Supreme Court has recognized several tests to determine when private conduct can be fairly attributed to the state, including the public function test, the state compulsion test, and the joint action test. See Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

82. Under the state compulsion test, Defendants' enforcement of government-mandated mask policies and COVID-19 regulations constitutes state action. The government's coercive power led to the Defendants' actions against the Plaintiff. See Blum v. Yaretsky, 457 U.S. 991 (1982).

83. The joint action test is satisfied here, as Defendants worked in close cooperation with state officials to implement and enforce COVID-19 policies. This "joint participation" with the state renders their conduct state action. See Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961).

84. Furthermore, by enforcing government mandates, Defendants were performing a public function traditionally exclusively reserved to the state: the enforcement of public health measures. This satisfies the public function test outlined in Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974).

85. The nexus between the state's COVID-19 regulations and the Defendants' actions is sufficiently close that the Defendants' actions may be fairly treated as that of the state itself. See Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974).

86. "The Supreme Court has recognized several tests to determine when private conduct can be fairly attributed to the state. In addition to those already mentioned, consider:

a) The symbiotic relationship test from Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961), where the private entity and the state have a sufficiently close nexus that they are effectively joint participants in the challenged action.

b) The entwinement test from Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. 288 (2001), where the private entity is entwined with governmental policies or the government is entwined in the entity's management or control.

87. In this case, the Defendants' enforcement of government-mandated COVID-19 policies creates such a symbiotic relationship and entwinement with the state that their actions constitute state action for purposes of § 1983 liability."

88. Therefore, despite being private entities, Defendants were acting under color of state law when they enforced mask mandates and other COVID-19 policies against Plaintiff, making them liable under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights.

89. The Supreme Court has recognized several tests to determine when private conduct can be fairly attributed to the state, including the public function test, the state compulsion test, and the joint action test. See Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

90. Under the state compulsion test, Defendants' enforcement of government-mandated mask policies and COVID-19 regulations constitutes state action. The government's coercive power led to the Defendants' actions against the Plaintiff. See Blum v. Yaretsky, 457 U.S. 991 (1982).

91. The joint action test is also satisfied here, as Defendants worked in close cooperation with state officials to implement and enforce COVID-19 policies. This "joint

participation" with the state renders their conduct state action. See Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961).

92. Furthermore, by enforcing government mandates, Defendants were performing a public function traditionally exclusively reserved to the state: the enforcement of public health measures. This satisfies the public function test outlined in Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974).

93. The nexus between the state's COVID-19 regulations and the Defendants' actions is sufficiently close that the Defendants' actions may be fairly treated as that of the state itself. See Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974).

94. Therefore, despite being private entities, Defendants were acting under color of state law when they enforced mask mandates and other COVID-19 policies against Plaintiff, making them liable under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights.

## XIV. ALTERNATIVE PLEADING

95. Pursuant to Federal Rule of Civil Procedure 8(d), Plaintiff pleads all claims in this complaint in the alternative and does not waive any claim or defense by asserting another.

96. If the Court or finder of fact determines that any Defendant did not act under color of state law, Plaintiff alternatively asserts all applicable claims against such Defendant(s) in their private capacities.

97. This alternative pleading ensures that Plaintiff preserves all potential claims and legal theories, allowing for flexibility as the case develops and evidence is presented.

## XV. CAUSES OF ACTION

The following causes of action arise from the facts alleged above. Each count sets forth a separate claim for relief against the Defendants. Plaintiff asserts these claims alternatively and cumulatively, and does not waive any claim by asserting another. The counts below demonstrate that

Defendants' conduct violated multiple federal and state laws, infringing upon Plaintiff's constitutional, statutory, and common law rights.

Count I: Violation of 42 U.S.C. § 1983 - Deprivation of First Amendment Rights (Against All Defendants)

98. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

99. The First Amendment, applicable to the states through the Fourteenth Amendment, protects the free exercise of religion and freedom of speech. Employment Division v. Smith, 494 U.S. 872 (1990)

100. Defendants, acting under color of state law by enforcing government mask mandates, deprived Plaintiff of his clearly established right to free exercise of religion by demanding he wear a mask in violation of his sincerely held religious beliefs. Defendants' actions violate the standard set forth in Employment Division v. Smith, 494 U.S. 872 (1990), as their application of the mask policy was not neutral or generally applicable, but rather discriminatorily enforced against Plaintiff despite his religious exemption.

101.    Defendants' conduct fails strict scrutiny under Sherbert v. Verner, 374 U.S. 398 (1963), as they cannot demonstrate a compelling government interest in forcing Plaintiff to wear a mask despite his exemption, nor that their actions were the least restrictive means of achieving any such interest.

102. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his constitutional rights. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for the burden-shifting framework in discrimination cases,

102.     "Defendants are not entitled to qualified immunity because the rights at issue were clearly established at the time of the alleged violations. Specifically:

a) The right to religious accommodation in employment has been clearly established since the Supreme Court's decision in Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977).

b) The right to reasonable accommodation for disabilities has been clearly established since the enactment of the ADA in 1990 and subsequent Supreme Court decisions such as US Airways, Inc. v. Barnett, 535 U.S. 391 (2002).

c) The right to be free from retaliation for asserting one's constitutional and statutory rights has been clearly established for decades, as affirmed in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).

d) Recent Supreme Court decisions, including Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. ___ (2020), have reaffirmed that constitutional rights remain in full force even during a pandemic.

No reasonable official could have believed that the systematic denial of Plaintiff's religious and disability rights was lawful in light of this clearly established law."

103.     "Defendants are not entitled to qualified immunity for their violations of Plaintiff's clearly established constitutional and statutory rights. The right to religious accommodation, freedom from religious discrimination, and protection against disability discrimination have been firmly established for decades, as affirmed in cases such as Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136 (1987) and Olmstead v. L.C., 527 U.S. 581 (1999). Moreover, recent Supreme Court decisions, including Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. ___ (2020) and Tandon v. Newsom, 593 U.S. ___ (2021), have reaffirmed that constitutional rights remain in full force even during a pandemic. No reasonable official could

have believed that the systematic denial of Plaintiff's religious and disability rights was lawful, particularly given the clear statutory mandates of Title VII and the ADA. Furthermore, qualified immunity is not available for claims seeking injunctive relief, as established in Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518 (9th Cir. 1989). Given the egregious nature of Defendants' conduct and the clarity of the law, qualified immunity should not shield them from liability for their actions."

A. Recent Supreme Court decisions have reaffirmed the importance of protecting constitutional rights, even during a pandemic. In Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. ___ (2020), the Court held that "even in a pandemic, the Constitution cannot be put away and forgotten." Similarly, in Tandon v. Newsom, 593 U.S. ___ (2021), the Court emphasized that government regulations trigger strict scrutiny whenever they treat any comparable secular activity more favorably than religious exercise. These principles apply directly to Defendants' discriminatory enforcement of mask policies against Plaintiff despite his religious exemption.

104.      Defendants cannot claim the defense of qualified immunity for their actions. The right to religious accommodation in the workplace has been clearly established for decades, and no reasonable official could have believed that the systematic denial of Plaintiff's religious rights, as described herein, was lawful.

105.      Defendants are not entitled to qualified immunity for their violations of Plaintiff's clearly established constitutional rights. The right to religious accommodation and freedom from religious discrimination has been clearly established for decades, as affirmed in Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136 (1987). No reasonable official could have believed that the systematic denial of Plaintiff's religious rights was lawful.

Count II: Violation of Title VII of the Civil Rights Act of 1964 - Religious Discrimination (Against Defendants Platt, Smith, and GILBERT)

106.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

107.    The McDonnell Douglas burden-shifting framework, established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to Plaintiff's religious discrimination claim as follows:

a. Prima Facie Case: Plaintiff has established a prima facie case of religious discrimination by showing that (1) he held a sincere religious belief that conflicted with an employment requirement; (2) he informed his employer of this belief; and (3) he was disciplined, or in this case terminated, for failing to comply with the conflicting non-existing employment requirement.(3) Defendant PLATT admitted that he did not have a company policy at the date of the termination of Plaintiff.

b. Legitimate, Non-Discriminatory Reason: The burden now shifts to Defendants to articulate a legitimate, non-discriminatory reason for their adverse employment action against Plaintiff.

c. Pretext: If Defendants provide such a reason, the burden shifts back to Plaintiff to show that the stated reason is a pretext for religious discrimination. Plaintiff can demonstrate pretext by showing that Defendants' proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated their conduct.

108.    Plaintiff contends that he can satisfy all elements of this framework, demonstrating that Defendants' actions constitute unlawful religious discrimination under Title VII.

109.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits discrimination in employment on the basis of religion.

110.    Plaintiff held a sincerely held religious belief that prevented him from wearing a mask.

111.    Plaintiff informed Defendants of this belief and requested a religious accommodation.

112.    Defendants failed to reasonably accommodate Plaintiff's religious beliefs and instead terminated his employment.

112B. Moreover, qualified immunity is not available for claims seeking injunctive relief, as established in Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518 (9th Cir. 1989).

113.    Defendants' conduct violates the standard set forth in Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), as accommodating Plaintiff's religious beliefs would not have caused undue hardship to the employer.

114.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his civil rights.

Count III: Violation of the Americans with Disabilities Act - Failure to Accommodate (Against Defendants Platt, Smith, and GILBERT)

115.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

116.    The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., prohibits discrimination against qualified individuals with disabilities and requires employers to make reasonable accommodations for known disabilities.

117.    Plaintiff had a medical condition that qualified as a disability under the ADA and prevented him from safely wearing a mask.

118.    "Plaintiff's medical condition substantially limits one or more major life activities, specifically breathing, as defined in 42 U.S.C. § 12102(2)(A). The condition prevents Plaintiff from safely wearing a mask for extended periods, which significantly restricts his ability to breathe normally. This impairment is substantial when compared to the average person in the general population, as per 29 C.F.R. § 1630.2(j)(1)(ii). Furthermore, under the ADA Amendments Act of 2008, the definition of disability is to be construed broadly in favor of expansive coverage, as clarified in 29 C.F.R. § 1630.2(j)(1)(i). Plaintiff's condition meets this

standard, as it would substantially limit a major life activity when active, even if the symptoms are episodic or in remission, consistent with 42 U.S.C. § 12102(4)(D)."

119.    Plaintiff informed Defendants of his disability and requested an accommodation.

120.    Defendants failed to engage in the interactive process required by the ADA and instead terminated Plaintiff's employment.

121.    Defendants' conduct violates the standard set forth in US Airways, Inc. v. Barnett, 535 U.S. 391 (2002), as the requested accommodation was reasonable and would not have imposed an undue hardship on the employer.

122.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his civil rights.

Count IV: Violation of Washington Law Against Discrimination - RCW 49.60 (Against All Defendants)

123.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

124.    The Washington Law Against Discrimination, RCW 49.60, prohibits discrimination in employment on the basis of creed and disability.

125.    Defendants discriminated against Plaintiff on the basis of his creed by failing to accommodate his religious beliefs regarding mask-wearing.

126.    Defendants discriminated against Plaintiff on the basis of disability by failing to accommodate his medical condition that prevented him from safely wearing a mask.

127.    Defendants' conduct violates the standard set forth in Kumar v. Gate Gourmet, Inc., 180 Wash. 2d 481 (2014), which requires employers to reasonably accommodate an employee's religious practices absent undue hardship.

128.   As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his civil rights.

Count V: Wrongful Discharge in Violation of Public Policy (Against Defendants Platt, Smith, and GILBERT)

129.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

130.   Washington recognizes a cause of action for wrongful discharge when the discharge contravenes a clear mandate of public policy. Thompson v. St. Regis Paper Co., 102 Wn.2d 219 (1984).

131.   Plaintiff's termination for refusing to violate his religious beliefs and disregard his medical needs contravenes the clear public policy in favor of religious freedom and protection of individuals with disabilities.

132.   As a direct and proximate result of Defendants' unlawful termination, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his civil rights.

Count VI: Intentional Infliction of Emotional Distress (Against All Defendants)

133.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

134.   Defendants' conduct in repeatedly harassing Plaintiff, publicly humiliating him, and terminating his employment was extreme and outrageous.

135.   Defendants' conduct was intentional or reckless.

136.   As a result of Defendants' conduct, Plaintiff suffered severe emotional distress.

137.    Defendants' conduct meets the standard for intentional infliction of emotional distress set forth in Kloepfel v. Bokor, 149 Wash. 2d 192 (2003).

Count VII: Violation of Washington's Law on Collection of Personal Data - RCW 19.375 (Against All Defendants)

138.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

139.    RCW 19.375 prohibits the collection and use of personal health information without consent.

140.    Defendants repeatedly demanded Plaintiff disclose private medical information regarding his mask exemption without his consent.

141.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages including violation of his privacy rights and emotional distress.

142.    "Plaintiff has standing to bring this action under Article III of the Constitution. Plaintiff has suffered concrete and particularized injuries that are actual and imminent, not conjectural or hypothetical, as required by Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Specifically, Plaintiff has suffered:

a) Loss of employment and associated income;

b) Emotional distress and mental anguish;

c) Violation of his constitutional rights to free exercise of religion and freedom from religious discrimination;

d) Violation of his statutory rights under the ADA and Title VII;

e) Damage to his professional reputation.

143.     These injuries are fairly traceable to the Defendants' actions and are likely to be redressed by a favorable decision from this Court, satisfying the causation and redressability requirements of Article III standing."

Count VIII: Civil Conspiracy under 42 U.S.C. § 1985(3) (Against All Defendants)

144.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

145.     Defendants engaged in a conspiracy to deprive Plaintiff of his constitutional rights, including his rights to free exercise of religion, freedom from religious discrimination, and equal protection under the law.

146.     The coordinated actions of Defendants, as described in paragraphs 44-46, demonstrate an agreement between two or more persons to deprive Plaintiff of his constitutional rights.

147.     Defendants took overt acts in furtherance of this conspiracy, including but not limited to coordinated harassment, discrimination, and ultimately the termination of Plaintiff's employment.

148.     Defendants' conspiracy was motivated by a class-based, invidiously discriminatory animus against Plaintiff due to his religious beliefs and disability status. This satisfies the requirement for § 1985(3) claims as established in Griffin v. Breckenridge, 403 U.S. 88 (1971).

149.     As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered deprivation of his constitutional rights and damages including loss of employment and emotional distress.

Count IX: Retaliation under Title VII and the ADA (Against Defendants Platt, Smith, and GILBERT)

150.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

151.     Plaintiff engaged in protected activity under Title VII and the ADA by asserting his right to religious and disability accommodations.

152.    Defendants took adverse employment actions against Plaintiff, including harassment and termination, because of his protected activity.

153.    There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as evidenced by the temporal proximity and the pattern of escalating retaliation.

154.    "The causal connection between Plaintiff's protected activities and the adverse actions taken against him is evidenced by:

a) The close temporal proximity between Plaintiff's assertion of his rights and the escalating harassment and ultimate termination;

b) The pattern of increasingly adverse actions following each instance of Plaintiff asserting his rights;

c) Direct statements by Defendants linking their actions to Plaintiff's religious beliefs and disability status;

d) The departure from normal procedures in Plaintiff's termination;

e) The pretextual nature of the reasons given for Plaintiff's termination, as evidenced by his prior exemplary work record."

155.    As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his civil rights.

Count X: First Amendment Retaliation under 42 U.S.C. § 1983 (Against All Defendants)

156.    "Plaintiff's speech regarding his religious objections to mask mandates addressed matters of public concern, as evidenced by:

a) Widespread media coverage of religious objections to mask mandates, to be cited,

b) Public demonstrations and protests regarding mask mandates and religious freedom, to be cited,

c) Legislative debates and hearings on the balance between public health measures and religious liberty, to be cited,

d) Court cases addressing similar issues, such as Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. ___ (2020)."

157.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

158.    Plaintiff engaged in constitutionally protected speech by expressing his religious beliefs regarding mask-wearing.

159.    Defendants took adverse actions against Plaintiff, including harassment and termination, because of his protected speech.

160.    "Plaintiff's speech regarding his religious objections to mask mandates addressed matters of public concern, as it related to government policies affecting public health, individual liberties, and the balance between safety measures and personal freedoms during a pandemic. This speech went beyond mere personal grievances and touched upon issues of societal and political significance, including the scope of religious exemptions to public health measures and the extent of government authority in health crises. Such topics are inherently matters of public concern, as they relate to 'political, social, or other community concerns,' as established in Connick v. Myers, 461 U.S. 138 (1983). Furthermore, Plaintiff's speech contributed to the ongoing public debate about the appropriateness and enforcement of mask mandates, thus satisfying the public concern requirement for First Amendment retaliation claims."

161.     There is a causal connection between Plaintiff's protected speech and the adverse actions taken by Defendants.

162.     Plaintiff's speech regarding his religious objections to mask mandates addressed a matter of public concern, as it related to government policies affecting public health and individual liberties. This satisfies the public concern requirement established in Connick v. Myers, 461 U.S. 138 (1983), for First Amendment retaliation claims.

163.     As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his constitutional rights.

Count XI: Violation of Washington's Healthcare Information Act - Chapter 70.02 RCW (Against All Defendants)

164.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

165.     While the Health Insurance Portability and Accountability Act (HIPAA) does not provide a private right of action, as held in Acara v. Banks, 470 F.3d 569 (5th Cir. 2006), Defendants' violations of HIPAA standards serve as evidence of the applicable standard of care for handling medical information.

166.     Washington's Healthcare Information Act, Chapter 70.02 RCW, protects the confidentiality of health care information and provides patients with the right to control the disclosure of such information.

167.     Defendants repeatedly demanded that Plaintiff disclose private health care information regarding his mask exemption without his consent and without proper authorization under RCW 70.02.020.

168.     Defendants' demands for Plaintiff's private health information and subsequent disclosure of this information to others constitutes a violation of RCW 70.02.020.

169. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages including violation of his privacy rights and emotional distress.

Count XII: Corporate Liability under Title VII and the ADA (Against Defendants KINETIC LOGISTICS, FEDEX CORP, and SHELL USA, INC)

170. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

171. The corporate defendants are employers within the meaning of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

172. The corporate defendants maintained and enforced discriminatory policies and practices that resulted in the denial of reasonable accommodations for Plaintiff's religious beliefs and medical condition.

173. The corporate defendants are liable for the discriminatory actions of their employees under the theory of respondeat superior and for their own failure to prevent discrimination and retaliation in the workplace.

174. The Supreme Court in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998) established that employers are vicariously liable for hostile work environments created by supervisors.

175. As a direct and proximate result of the corporate defendants' unlawful discrimination and retaliation, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his civil rights.

Count XIII: Systemic Pattern or Practice of Discrimination (Against All Corporate Defendants)

176. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

177.     The corporate defendants engaged in a systemic pattern or practice of discrimination against employees with religious or medical exemptions to mask mandates.

178.     This pattern or practice was not based on bona fide occupational qualifications and was not justified by business necessity.

179.     The corporate defendants' pattern or practice of discrimination violates Title VII, the ADA, and the Washington Law Against Discrimination (WLAD), RCW 49.60.

180.     The Supreme Court in International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977) established that a pattern or practice of discrimination can be challenged even by individual plaintiffs when the discrimination is pervasive.

181.     As a direct and proximate result of the corporate defendants' unlawful pattern or practice of discrimination, Plaintiff has suffered damages including loss of employment, emotional distress, and violation of his civil rights.

## XVI. ADDITIONAL LEGAL CONSIDERATIONS

182.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

183.     The corporate form should not be used to shield the individual defendants from liability. If necessary, this Court should pierce the corporate veil to hold the individual defendants personally liable. Washington courts allow piercing the corporate veil when there is an abuse of the corporate form and disregarding the corporate entity is necessary to prevent unjustified loss to the injured party. Meisel v. M & N Modern Hydraulic Press Co., 97 Wash.2d 403 (1982).

184.     Factors supporting piercing the corporate veil in this case include:

a) The corporate form was used to violate Plaintiff's rights and perpetrate fraud by enforcing unlawful and discriminatory policies; c) Adherence to the corporate fiction would sanction fraud and lead to an unjust result by allowing the individual defendants to escape personal liability for their actions.

b) The individual defendants exercised complete control over their respective corporate entities in the perpetration of the wrongful acts alleged herein;

c) The corporate form was used to violate Plaintiff's rights and perpetrate fraud by enforcing unlawful and discriminatory policies;

d) Adherence to the corporate fiction would sanction fraud and lead to an unjust result by allowing the individual defendants to escape personal liability for their actions.

185.    The Washington Supreme Court in Grayson v. Nordic Constr. Co., 92 Wash.2d 548 (1979), held that the corporate veil may be pierced when the corporate form is "used to violate or evade a duty owed to another." The actions of the individual defendants, as described in this complaint, constitute such a violation and evasion of their duties under anti-discrimination laws.

186.    Furthermore, the U.S. Supreme Court in Anderson v. Abbott, 321 U.S. 349 (1944), stated that "the interposition of a corporation will not be allowed to defeat a legislative policy." Here, allowing the individual defendants to hide behind the corporate form would defeat the legislative policies embodied in federal and state anti-discrimination laws.

## XVII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rylee Fleury respectfully requests that this Court:

A. Declare that the acts and conduct of Defendants violated Plaintiff's rights under federal and state law;

B. Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $500,000, for emotional distress, loss of enjoyment of life, and other non-pecuniary losses;

C. Award Plaintiff economic damages for back pay, front pay, and other economic losses in an amount to be determined at trial;

D. Award Plaintiff punitive damages against the individual Defendants in their individual capacities;

E. Award Plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws;

F. Grant a permanent injunction enjoining Defendants from engaging in the unlawful practices described herein;

G. Order Defendants to undergo training on religious and disability accommodations;

H. Award pre-judgment and post-judgment interest as provided by law; and

I. Award Plaintiff nominal damages for the violation of his constitutional rights;

J. Award Plaintiff punitive damages against the individual Defendants in an amount sufficient to deter future violations of constitutional rights;

K. Order Defendants to provide Plaintiff with a neutral reference for future employment opportunities;

L. Order Defendants to expunge any negative records or reports related to Plaintiff's termination or the events described in this complaint;

M. Order Defendants to publicly acknowledge the wrongful nature of their actions and apologize to Plaintiff;

N. Order the corporate defendants to implement comprehensive anti-discrimination policies and training programs to prevent future violations of employees' religious and disability rights;

O. Order the corporate defendants to submit to monitoring by an independent third party to ensure compliance with anti-discrimination laws;

P. Enjoin the corporate defendants from enforcing any policies that discriminate against employees with religious or medical exemptions to mask mandates;

Q. Award Plaintiff punitive damages against the corporate defendants in an amount sufficient to deter future systemic discrimination, as allowed under Kolstad v. American Dental Association, 527 U.S. 526 (1999);

R. Award Plaintiff specific damages as follows:

S. Award Plaintiff treble damages for all compensatory damages awarded, pursuant to the court's equitable powers and in recognition of Defendants' willful and repetitive violations of Plaintiff's rights. The authority for treble damages in civil rights cases stems from the court's inherent equitable powers to fashion appropriate remedies for intentional violations of federal law, as recognized in Smith v. Wade, 461 U.S. 30 (1983).

T. Award Plaintiff specific damages as follows:

a) Economic damages:

- Lost wages: $80,000 per year for 3 years = $240,000
- Lost benefits: Estimated at 30% of salary = $72,000
- Total economic damages: $312,000

b) Non-economic damages: $300,000, broken down as:

- Emotional distress: $200,000
- Damage to reputation: $100,000

c) Punitive damages:

- $250,000 against individual Defendants

* $500,000 against corporate Defendants

d) Nominal damages: $1 for the violation of each of Plaintiff's constitutional rights (Let's assume this is $1, though it could be more depending on the number of violations)

Subtotal before trebling: $1,362,001

Now, if we apply treble damages to the compensatory damages (economic and non-economic):

Trebled compensatory damages: ($312,000 + $300,000) × 3 = $1,836,000

Total calculation: Trebled compensatory damages: $1,836,000 Punitive damages: $ 750,000 Nominal damages: $ 1

Grand Total: $2,586,001

U. Issue a declaratory judgment pursuant to 28 U.S.C. § 2201 stating that: a) Defendants' actions violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution; b) Defendants' actions violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act; c) Defendants' mask mandate enforcement policies, as applied to Plaintiff, violated the Free Exercise Clause of the First Amendment and failed to provide religious accommodations as required by law; d) Defendants' actions constituted disability discrimination in violation of the ADA and failed to provide reasonable accommodations as required by law.

This declaratory relief is appropriate under the standard set forth in MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), as there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Justification for treble damages:

1. Treble damages are appropriate here due to the Defendants' repeated, willful violations of Plaintiff's clearly established rights, as evidenced by their continued discrimination despite Plaintiff's multiple attempts to assert his rights and explain his exemptions.

2. While treble damages are not explicitly provided for in federal civil rights statutes, courts have the equitable power to fashion appropriate remedies for intentional violations of federal law. This principle is supported by cases such as Smith v. Wade, 461 U.S. 30 (1983), which affirmed the availability of punitive damages in § 1983 cases for reckless or callous disregard for the plaintiff's rights.

3. The Washington Law Against Discrimination (WLAD) allows for treble damages in certain cases of willful discrimination, as per RCW 49.60.250(5). While this statute applies to administrative proceedings, it demonstrates the state's policy of enhancing damages for willful violations, which this Court may consider in exercising its equitable powers.

4. The purpose of treble damages in this case would be both punitive and deterrent, aimed at preventing future similar violations by these Defendants and others similarly situated.

e. Grant such other and further relief as this Court deems just and proper.

The corporate form should not be used to shield the individual defendants from liability. If necessary, this Court should pierce the corporate veil to hold the individual defendants personally liable. Washington courts allow piercing the corporate veil when there is an abuse of the corporate form and disregarding the corporate entity is necessary to prevent unjustified loss to the injured party. Meisel v. M & N Modern Hydraulic Press Co., 97 Wash.2d 403 (1982).

## XVIII. CONCLUSION

This complaint demonstrates that Defendants engaged in a pattern of unlawful discrimination, retaliation, and civil rights violations against Plaintiff Rylee Fleury. Their actions, undertaken under color of law, violated clearly established constitutional and statutory rights. The Defendants' conduct caused Plaintiff

significant harm, including loss of employment, emotional distress, and violation of his fundamental rights. Plaintiff respectfully requests that this Court grant the relief sought to remedy these violations and to deter future similar conduct by these and other similarly situated parties.

### XIX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: August _22_ 2024

Rylee Matthew Fleury, Plaintiff in *pro per*